**Surjit Singh GREWAL, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–71964.

United States Court of Appeals, Ninth Circuit.

Submitted July 23, 2004.*

Decided Nov. 17, 2004.

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Paul White, Esq., Law Office of Paul White, Ontario, Canada, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Terri J. Scadron, Esq., Efthimia S. Pilitsis, Washington, DC, for Respondent.

Before: SKOPIL, FARRIS, and LEAVY, Circuit Judges.

MEMORANDUM **

Surjit Singh Grewal ("Grewal"), a native and citizen of India, petitions pro se for review of the summary affirmance by the Board of Immigration Appeals (BIA) of the denial by an Immigration Judge (IJ) of his requests for asylum, withholding of removal and relief under the Convention Against Torture (Convention). The IJ determined that Grewal's testimony was not credible. We review the IJ's decision as the final agency determination. *See Garcia–Martinez v. Ashcroft,* 371 F.3d 1066, 1074 (9th Cir.2004). We have jurisdiction pursuant to 8 U.S.C. § 1252. We grant the petition for review.

We review adverse credibility findings under the substantial evidence standard. *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996). To support an adverse credibility finding, the BIA or the IJ must demonstrate "a legitimate articulable basis to

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Id.* We independently evaluate each ground cited by an IJ in support of adverse credibility findings. *Wang v. Ashcroft,* 341 F.3d 1015, 1021 (9th Cir.2003). Upon careful review of the record, we conclude that the IJ's findings are not supported by substantial evidence.

The IJ found that Grewal's testimony that he went into hiding after his first arrest was inconsistent with his testimony that he was driving a tour bus. Grewal testified that he was living in hiding after his second arrest, not his first arrest, therefore there is no inconsistency.

■ The IJ found a material inconsistency in the omission from Grewal's asylum application that the same policeman was present at his first and second arrest. "It is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996).

■ The IJ found that Grewal's testimony regarding his first arrest, his beating, and the recovery after the first arrest was "non-responsive and vague." The IJ also found that Grewal's statements about the police looking for him after he left for the United States were "vague and lacked meaningful detail." To support an adverse credibility determination based upon unresponsiveness, the IJ must identify particular instances where the petitioner refused to answer questions. *Singh v. Ashcroft,* 301 F.3d 1109, 1114 (9th Cir.2002). The IJ did not identify instances where Grewal failed to answer questions, and, furthermore, the record discloses that Grewal responded to each question asked, and his responses were sufficiently detailed. *See Zheng v. Ashcroft,* 382 F.3d 993, 1000 (9th Cir.2004) (testimony was fairly detailed

and IJ did not identify examples of how the petitioner's testimony lacked detail); *Kaur v. Ashcroft,* 379 F.3d 876, 887 (9th Cir.2004) ("[A] general response to questioning, followed by a more specific, consistent response to further questioning is not a cogent reason for supporting a negative credibility finding.").

The IJ doubted whether Grewal was in fact the younger brother of now-deceased Nurinder Grewal because Grewal's testimony about the dates of his parents' marriage and the ages of his brothers was "non-responsive and vague." Grewal and his surviving younger brother, Sukhminder Grewal, each testified that their mother gave birth to her first child, Nurinder Grewal, at a young age, then did not conceive another child for fifteen years. This testimony is neither vague nor non-responsive. The IJ also found it inexplicable that the autopsy report did not mention the tatoo on Nurinder Grewal's hand which Grewal claimed was identical to his own. However, it is mere speculation whether a four-page autopsy report of a pedestrian automobile fatality, which includes two short paragraphs describing an external examination, would routinely include a description of a tattoo on the deceased's hand. *See Kaur,* 379 F.3d at 887.

■ The IJ found it implausible that Grewal's mother's passport listed three children, including a son named "Hamjarit" but not her oldest son "Nurinder." Grewal and his younger brother Sukhminder Grewal both testified that their mother raised her nephew Hamjarit in their household and listed the three boys on her passport when she took these three with her to Pakistan. This explanation is not implausible.

The IJ noted that Nurinder Grewal's remains were sent back to Punjab, rather than to New Delhi where the family lived

and found that Grewal's explanation of this was vague. Grewal testified that his brother was born in a specific village in Punjab and his ancestors were from Punjab. This explanation is not vague.

■ The IJ found it implausible that the police arrested only the younger brother, Sukhminder Grewal, when all three brothers were co-owners of an automobile workshop in Delhi which the local police claimed to be connected to a car bombing in the Punjab. Grewal testified that a local politician was attempting to implicate his entire family in the car bombing, one brother was arrested, and two brothers eventually sought and secured asylum in the United States. This testimony is not implausible and the IJ's reasoning is based upon personal conjecture rather than evidence in the record. *See id.* at 887.

Grewal's family home and workshop were burned in the anti-Sikh riots in New Delhi in 1984. The IJ noted that in Grewal's asylum application, Grewal stated that he and his family took refuge in the local gudwara, but omitted mention in his application that anyone gave his family refuge. Grewal testified that their neighbor, Mr. Sharma, retrieved his family from the gudwara and sheltered them at his house. Grewal's testimony is not inconsistent with Grewal's asylum application and is corroborated by Mr. Sharma's oral testimony. The IJ also noted that Mr. Sharma failed to mention that he sheltered both brothers, but Mr. Sharma testified that after the fire, he tried to find the brothers, he found them at the gudwara, and they stayed in his home for seven to ten days.

The IJ found it inconsistent that Grewal testified that his father was killed in the fire, but later testified that his father survived the fire and did not die until sometime later. Grewal testified that his father was badly burned in the fire, was hospitalized for over a month, came home, could not walk, and because of the smoke, he was sick all the time, did not get better, and died. This testimony is detailed and not inconsistent. The IJ found it implausible that the police did not arrest Grewal's father. Grewal testified that his father never recovered from the injuries from the fire and could not walk, therefore it is not implausible that the police would not arrest him.

■ The IJ found several inconsistencies and implausibilities in Grewal's account of his second arrest. The IJ found it implausible that the police arrested Grewal on suspicion of transporting Sikh insurgent bombers who hijacked his bus, then focused upon Grewal in order to have Grewal bring his brothers back from the United States. The IJ also found that Grewal testified inconsistently about when he told the police about the hijackers. Grewal testified that his bus was stopped because the police suspected he transported the bombers, and, during his detention, the police recognized him and questioned him about his brothers who had sought asylum in the United States. Personal conjecture about the motives of the police cannot support an adverse credibility determination. *See id.* at 887–88. Grewal also testified consistently that he was beaten when the police stopped his bus, as he was taken away, and during his detention.

The IJ found that Grewal's testimony about the details of the second arrest was implausible because the newspaper account did not mention that the suspected bombers were dressed like Sikhs and it was implausible that Grewal would believe that the police wanted money from bribes. The fact that a newspaper account does not contain the same amount of detail as Grewal's testimony is not a material omission. Grewal's testimony about the Indian police taking bribes is well-supported in State Department reports.

Grewal's brother, Sukhminder Grewal, who received asylum in the United States for similar alleged persecution targeted at the Grewal family, testified that Grewal was arrested "quite a few" times, including one arrest with his two brothers in 1995. The IJ found it material that Grewal failed to mention that he was arrested along with his two brothers in 1995. Sukhminder Grewal testified that when all three brothers were arrested, the police released Grewal "right away." Grewal's attorney sought to clarify whether Grewal had been arrested many times or two times. Grewal responded that the police twice kept him in jail and beat him, "but beside that, they would come, take money." This testimony is not inconsistent with his brother's testimony that when the brothers were arrested together, Grewal was released right away.

■ The IJ found it implausible that Grewal's brother, Sukhminder Grewal, made no mention of his other brothers' problems in his asylum application and never called home after he came to the United States. The IJ's implausibility finding is based upon speculation. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir.2000) (rejecting an IJ's "subjective view of what a persecuted person would include in his asylum application"). Also, nothing in Sukhminder Grewal's asylum application is inconsistent with Grewal's asylum application, and the fact Sukhminder Grewal omitted details of his brothers' experiences is not material or relevant to Grewal's asylum application. *See Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir. 2004) (discrepancies that cannot be viewed as attempts to enhance claims of persecution have no bearing on credibility).

The IJ found that Grewal's witnesses— his brother Sukhminder Grewal and his neighbor Mr. Sharma—were not credible. The IJ failed to articulate a legitimate basis to question the witnesses' credibility and failed to offer specific and cogent reasons for his stated disbelief. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002). The IJ also found that Grewal failed to submit any meaningful corroboration to his claim. However, Grewal submitted several documents, including family photographs, passports, his brother Sukhminder Grewal's asylum application, and the letters granting asylum to his brothers Sukhminder Grewal and Nurinder Grewal. *See id.* at 1227. ("Where, as here, a petitioner provides some corroborative evidence to strengthen his case, his failure to produce still more supporting evidence should not be held against him.").

In summary, the IJ cited over 20 "implausibilities" which were in fact plausible and "vague responses" which were in fact specific. The IJ's concluded that this was a "house of cards claim," but we carefully examined each of the "implausibilities" and "vague responses" and found that none were supported by the record. Therefore, the adverse credibility finding is unsupported by substantial evidence. *See Kebede v. Ashcroft*, 366 F.3d 808, 809 (9th Cir.2004).

Because we reverse the adverse credibility determination, Grewal has established past persecution and a presumption arises that he has a well-founded fear of future persecution. In order to rebut this presumption, the government must show by a preponderance of the evidence that there has either been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear" or the "applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." *See* 8 C.F.R. § 1208.13(b)(1)(i)(B) (relocation); *Baballah v. Ashcroft*, 335 F.3d 981, 992 (9th Cir. 2003) (changed conditions). Such evidence must be individualized and show how

changed conditions will affect the specific petitioner's situation. *Garcia–Martinez*, 371 F.3d at 1074 (internal citations omitted). The government has not produced adequate evidence. The submitted State Department report is not sufficiently particularized to reach Grewal's situation, nor does it indicate how, "under all the circumstances, it would be reasonable for the applicant to relocate." 8 C.F.R. § 1208.13(b)(3)(ii).

Because the adverse credibility and changed conditions determinations are not supported by substantial evidence, we grant Grewal's petition for review. We conclude that Grewal is eligible for asylum and we remand so that the Attorney General may determine whether to exercise discretion to grant asylum and for further consideration of Grewal's withholding claim. *See Mashiri v. Ashcroft*, —— F.3d ——, 2004 WL 2435489 at *9 (9th Cir. 2004).

**PETITION GRANTED; REMANDED.**

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.